suggesting that the action would not lie simply by reason of the fact that the claim was for injury to person, and not to property.

The contention of the defendant that the owner of property on which sewage has overflowed from a public sewer cannot recover damages for loss of health has been expressly decided against the defendant's contention in the case of Allen v. City of Boston, 159 Mass. 324, 34 N. E. 519. This was an action to recover for injuries to plaintiff's property, health, and business occasioned by a defective sewer. The court say: "The defendant also alleged that the only damage the plaintiff can recover, if any, would be injury to his property, and that injury to his health or business was wrongly allowed to be included in the damages. Such damages were specially alleged, and are clearly recoverable." Allen v. City of Boston case is referred to in the opinion in Hughes v. City of Auburn, supra, without disapproval, but distinguishing it from that case. Where, by reason of the negligence of a municipality, a trespass is committed upon premises by allowing the contents of a sewer to overflow thereon, and a private nuisance is thus created, we see no reason why the owner of the premises cannot recover, as damages, not only the injury to the property, but all other damages that are the natural and proximate result of the wrong. The damages must depend upon the proof in each case, and are only limited by the ordinary rules that require that they should not be remote or speculative.

The judgment is affirmed, with costs. All concur, except EDWARDS, J., not voting.

---

(61 App. Div. 214.)

### MULLIGAN v. THIRD AVE. R. CO.

(Supreme Court, Appellate Division, First Department. May 17, 1901.)

1. STREET RAILROADS—CROSSING ACCIDENTS—NEGLIGENCE—SUFFICIENCY OF EVIDENCE.

Plaintiff, in attempting to cross street-car tracks, passed behind one car, and in front of a car going in the opposite direction, which she testified was at a distance of about 25 feet from her, and that she then stepped back off the track, and noticed a truck going in the opposite direction, which was then almost on her, and that she was then struck by the car, and lost consciousness. The motorman, who did not stop the car, saw the plaintiff, but there was nothing to charge him with notice that she was in a dangerous position after she stepped back from the track. The front of the car apparently passed the plaintiff without striking her. *Held* not sufficient to show that the motorman was negligent in failing to stop the car.

2. SAME.

Evidence of a witness, in an action for injuries caused by being run over by a street car, who has never been a gripman on such car, that it can be stopped within 15 or 20 feet, is not sufficient to establish the defendant's negligence in not stopping the car before it reached the plaintiff, who was discovered when about 25 feet in front thereof.

3. WITNESS—CROSS-EXAMINATION—REDIRECT EXAMINATION.

Where plaintiff testifies on cross-examination that she does not remember her testimony given on a former trial of the case, it is error to allow her to testify, on redirect examination, as to her testimony given on such trial.

Patterson and Hatch, JJ., dissenting.

Appeal from trial term, New York county.

Action by Mary Mulligan against the Third Avenue Railroad Company for injuries received while crossing defendant's tracks. From a judgment in favor of the plaintiff, and from an order denying a motion for a new trial, the defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

Eugene Treadwell, for appellant.
Franklin Pierce, for respondent.

INGRAHAM, J. The plaintiff attempted to cross Third avenue at the lower crossing of Eighty-Fourth street. When she got to the westerly track she had to stop to allow some trucks to pass. Following these trucks there was a car, and she then waited for the car to pass, and as she describes the situation:

"After the car passed I started to cross the uptown track,—the westerly rail of the uptown track,—and I just stepped upon it, and saw the car, and stepped back immediately. * * * When I stepped back, I turned slightly to see if I could retrace my steps, and I saw a truck coming down on the down track, and the wheels of the truck were a considerable distance east of the westerly track,—of the easterly rail of the westerly track. The horses were right at me,—right near me. * * * The horses were right near me,—almost upon me. The car came on towards me. The car struck me then, and I lost consciousness."

She further testified that she first saw the car when it was about 25 feet away, and that she stepped upon the track at that moment; that just as soon as the downtown car had passed she stepped right back of the rear end of the car, and that she then saw the car coming on the uptown track, and stepped back, and turned towards the left, and for the first time saw the truck. This is all the evidence there is from which the jury were justified in finding that the defendant was negligent and the plaintiff free from contributory negligence. The plaintiff passed immediately behind the car going down, and as she stepped upon the uptown track she saw an uptown car approaching, and then she stepped back off the uptown track.

The question arises as to what there was here to charge the motorman with negligence. He saw the plaintiff stepping on the track when the car was 25 feet away from her, and then saw her step back again off the track, and there is nothing to show that he was chargeable with knowledge that when she was off the track she was in a situation of danger. The car apparently passed the plaintiff without striking her, and there is no evidence that she was on the track when the car reached her, or that she was struck at all by the car. She says the car struck her, but does not say what part of the car, and it is quite evident from her own story that she was off the track when the car passed her. There certainly was nothing to charge this motorman with notice that the plaintiff was in a situation of danger so to make it his duty to stop the car, and I fail to find any evidence of defendant's negligence. When this case was before this court on a former appeal (57 N. Y. Supp. 424), it was then held that there was no evidence of negligence, and Mr. Justice Patterson, writing the opinion of the court, said:

"It thus appears that when the defendant's car, coming at a rapid rate, was twenty-five feet from the plaintiff, she was in the act of crossing the

track upon which that car was running. It also appears that at that time the truck was some twenty-five feet northward of the plaintiff. There is nothing to show why the gripman of the car had not every reason to believe that the plaintiff, being on the track proceeding eastwardly, could cross that track in safety before the car could reach her, or that he had any reason to anticipate that she would turn and retrace her steps, and put herself in the peril of coming in contact with the truck. How far the car traveled while the plaintiff was in the act of turning and withdrawing from the easterly track is not shown, but it must have proceeded some distance. Assuming that the gripman, when the plaintiff retreated from the track, saw the danger to which the plaintiff was exposed, it was then necessary for the plaintiff to show that he could have controlled the speed of the car in such a way as to have prevented the accident."

It seems to me what was said on that appeal is conclusive upon this. There was nothing to justify the jury in assuming that the gripman had such knowledge that this plaintiff was in a situation of danger when she stepped upon the track, and at once stepped back, as to require him to stop his car; and there is nothing upon which to predicate his negligence in not stopping the car. Nor do I think that the evidence of a man, who never was a gripman on one of these cars, that in his opinion the car could have been stopped in 15 or 20 feet, is a sufficient basis to find the defendant negligent in not stopping the car before it reached the plaintiff. Upon the whole case, therefore, I fail to find that there was any evidence to justify the finding of the jury that the defendant was negligent.

I also think it was error to allow the plaintiff to testify as to evidence she gave on a former trial. The counsel for the defendant on cross-examination asked the plaintiff if she had given certain testimony on the former trial, to which she answered that she did not remember, and there was no evidence obtained on behalf of the defendant as to what the testimony on the former trial had been. Upon redirect examination, it was improper for the counsel for the plaintiff to ask his client what she had testified to on the former trial.

Judgment appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and McLAUGHLIN, J., concur.

PATTERSON, J. (dissenting). When this cause was before us on a former appeal (39 App. Div. 663, 57 N. Y. Supp. 424), a judgment in favor of the plaintiff was reversed in consequence of an erroneous instruction given by the judge to the jury respecting the condition of the evidence as to a material fact affecting the issue of the negligence of the defendant's servant, and we also reached the conclusion that on the whole case, as then made, there was not sufficient evidence of the defendant's negligence to permit the case to go to the jury. On the trial now under review, a very different case has been made. It is shown that on April 20, 1896, about noon, the plaintiff started to cross Third avenue at the south crossing of Eighty-Fourth street. There were passing downtown, on the westerly side of the street, several heavily laden trucks, and one of the defendant's cars, moving southward, in the rear of them. After that car had passed, the plaintiff proceeded to cross the street, and had gone as far as the westerly rail of the easterly track of the defendant's road, when she

observed one of the defendant's north-bound cars approaching her at a distance which she fixes at about 24 or 25 feet. The testimony is that the car was proceeding very rapidly, and that no signal of its approach had been given before the plaintiff reached the track upon which it was moving. Fearing that she could not cross before the car reached her, she stepped backward, and then discovered that a heavy truck, drawn by two horses on a trot, was moving southward, and that the horses' heads were within a few feet of her. The defendant's north-bound car was still moving, and the plaintiff found herself placed in the narrow space between the easterly and westerly tracks of the defendant's road, and between vehicles moving in opposite directions. Her testimony is that she tried to stand between the wheels of the truck and the car moving northward. She was struck by the car, thrown down, and seriously injured. Under the proofs in the case, the question of contributory negligence was undoubtedly one for the jury. If the defendant's servant, the gripman, was guilty of negligence, it consisted in not stopping the car so as to avert the accident. It is apparent that the plaintiff was in a position of danger. The gripman saw her when she first came between the tracks. He did not then stop his car, nor did it stop until after the plaintiff had been struck, and it had reached the northerly crosswalk of Eighty-Fourth street. There was conflicting evidence as to the distance of the defendant's car from the plaintiff when she first reached the easterly track of the defendant's road. The testimony is more distinct, however, upon this subject than it was on the first trial. It was incumbent upon the plaintiff to prove that the gripman could have controlled the speed of the car in such a way as to prevent the accident when he saw that the plaintiff had retreated from the easterly track. If the conditions were such as the plaintiff and the other witnesses on her behalf testified to, they were open to the observation of the gripman. There was testimony on the part of the plaintiff to show that the car could have been stopped within 15 feet. The testimony on the part of the defendant was that it could not have been stopped under 30 feet, at the rate of speed at which it was going. Upon the conflicting evidence, the jury found for the plaintiff, and I see no reason for interfering with their verdict, unless errors were committed in the admission of evidence or in instructions to the jury.

It is urged by the appellant that an error was committed in allowing one of the plaintiffs' witnesses to answer under an objection a question asked, not by the plaintiff's counsel, but by the court. It related to the distance within which a car could be stopped, equipped as was that by which the plaintiff was struck. This witness was shown to be competent to testify. He was a gripman acquainted with the system by which the defendant's cars were operated. He testified that he could state the space within which such a car could be stopped, running on level ground, with a dry track, at the rate of eight miles an hour. After so testifying, he was asked to state within what space the car could be stopped; and before he gave his answer he was asked by the court the following questions: "That is, within what space could it be stopped with those equipments by a gripman using ordinary care?" This was objected to as incompetent. The

objection was overruled, and an exception was taken. The answer was, "Fifteen feet, at the outside." It is now argued by the appellant that the question as put by the court, introducing a condition as to ordinary care, was calling for expert evidence upon the subject of the exercise of ordinary care, and that it was for the jury to say within what space a car could be stopped by a gripman using ordinary care, and that expert evidence as to what was ordinary care, or what could have been done in the exercise of ordinary care, was not required to aid the jury in determining that issue. Under the condition of the proof, the question asked by the court did not call for incompetent testimony. It called for knowledge of the witness, and it is difficult to perceive how the fact of the space within which a car could be stopped can be stated or described to a jury so as to enable them to form an accurate judgment upon that subject, unless it be by the testimony of those who, from their knowledge and practical experience, can testify to the fact itself. In its nature, the testimony of such qualified persons is the best evidence that can be furnished on the subject. Such witnesses speak from actual personal knowledge. Without their testimony, the matter becomes one of mere guesswork, or speculation. The testimony upon the general inquiry being competent, the incorporation in the question of the condition of ordinary care on the part of the gripman in operating the car does not constitute legal error. It merely called the attention of the witness to a factor descriptive of the usual, ordinary, and proper operation of a car in motion. It called upon him to testify as to a fact within his knowledge under normal conditions, and was evidently intended to discriminate between ordinary conditions and those arising under an emergency, where the gripman of a car may be called upon to exercise much more than the usual or ordinary care required in the control of the car. The witness was not called upon to testify to anything concerning the duty of the gripman in a concrete case.

On the redirect examination of the plaintiff, she was permitted to testify to what she had sworn to on the former trial, and it is claimed that this was error. On her cross-examination the defendant's counsel called her attention to the fact that she had testified on that trial that when she first saw the car she was between the two tracks, and that the car was 24 or 25 feet distant from her. On her direct examination she had stated that she did not see the car until she had reached the westerly rail of the easterly track. It is claimed that there was a material difference in her testimony in the first and second trials upon this point, and that it affected her credibility. On her redirect examination, her counsel asked her whether she did not testify to certain things upon this subject, and the question was objected to as incompetent, irrelevant, and immaterial. The court allowed the question on the ground that the defendant's own cross-examination made it obviously a proper one. The question was then further objected to as incompetent, irrelevant, and immaterial, and that it was an improper way of calling the witness' attention to the testimony; that in effect it was reading testimony from the last trial. Thereupon the court

ruled that the question was proper because the defendant's counsel, upon cross-examination, sought to elicit statements alleged to have been made on the former trial unfavorable to the witness, making it proper for her to show that on the former trial she made statements entirely consistent with the testimony she was then giving. This ruling was correct, and the record sustains it. The defendant was attempting to impeach the witness by what she had testified to on the former trial. The plaintiff was merely asked, concerning other testimony she had given on that trial, to show that there was no material contradiction in her evidence on the two trials. In Re Chamberlain, 140 N. Y. 391, 35 N. E. 602, this question was passed upon. In that matter an executrix had been examined under section 2735 of the Code of Civil Procedure in a proceeding distinct from her accounting. On her subsequent accounting, her testimony in the distinct proceeding was held admissible against her as to material facts. She then offered in evidence the whole of her examination on that preliminary proceeding, but it was excluded. Only a part of it had been read by the contestants. The court of appeals said that the surrogate properly ruled that only such parts of the testimony as tended to explain such portions as were offered in evidence by the contestants were admissible in her behalf, and that the fact that a part was offered by the contestant did not open the door for the admission of the whole testimony.

It is also urged that in his charge to the jury the judge made an erroneous and misleading statement of fact relating to the subject of the time within which the car could be stopped at the rate of speed at which it was going. That was excepted to, and the court thereupon said:

"I do not presume to state, gentlemen, just what the speed was. There has been some evidence here that at a particular time the car was going at half the usual rate of speed. Indeed, I think that came from your own witness, the conductor. Just what the speed was, I do not undertake to direct you."

The point of the defendant's criticism seems to be that the court referred to the car going at half speed at the time the plaintiff made her appearance, when the car was 24 or 25 feet away. The conductor had testified that at the time of the accident the car was going at half speed. The defendant insists that "at the time of the accident" was not when the plaintiff first appeared, but when she came in contact with the car. There was no substantial error in the remarks of the judge. The time of the accident referred, not to the actual contact of the car with the plaintiff, which might be the fraction of a second, but to the time from the appearance of the plaintiff on the easterly track to the actual collision of the car with the plaintiff. No other exception requires consideration; neither are the damages excessive.

The judgment and order appealed from should be affirmed, with costs.

HATCH, J. I concur with Mr. Justice PATTERSON in the view which he has taken of the evidence in this case, and the inferences

he draws therefrom, that the plaintiff was entitled to have the case submitted to the jury upon the questions of the defendant's negligence and the plaintiff's freedom from contributory negligence. Mr. Justice PATTERSON'S discussion of this matter is entirely satisfactory to me, and I concur therein. I am unable to conclude, however, that no error was committed in permitting the question to be asked as to what the plaintiff testified to upon the former trial. The basis for this ruling was made to depend upon the cross-examination of the plaintiff, and the ruling is sought to be supported upon the ground that the evidence given by the plaintiff upon the redirect examination tended to qualify or explain the matter to which the cross-examination had been directed. The difficulty is that the evidence given upon the redirect examination upon this subject did not tend to qualify or explain the questions or answers given upon the cross-examination relating thereto. For the most part there were no answers given by the plaintiff relating to this matter. Practically it developed a mere lack of recollection, and, so far as she gave any affirmative testimony in answer thereto, it cannot be said that the subsequent question and answer, upon the redirect examination, qualified or explained it as matter of fact, or, if so, it greatly exceeded anything which is qualified or explained. On the contrary, the plaintiff's counsel condensed the whole of the witness' testimony upon this subject given upon the former trial into one question, and the court permitted it to be answered. In substance and effect, this permitted the plaintiff to testify to declarations which she had made upon the former trial, and it became a subject for the present consideration of the jury. It was not an explanation or qualification of the cross-examination upon this matter, and was therefore improper, and falls under condemnation. In re Chamberlain, 140 N. Y. 393, 35 N. E. 602; Suffolk Co. v. Shaw, 21 App. Div. 146, 47 N. Y. Supp. 349.

The charge of the court that the car was running at the rate of eight or nine miles an hour before it struck the plaintiff, and its reiteration, bore upon a subject vital to the plaintiff's case, and was of very doubtful propriety. I should hesitate about reversing this judgment upon such ground, but the admission of the testimony above adverted to seems to present clear error. I am in favor, therefore, of reversing this judgment, and granting a new trial.