(87 App. Div. 320.)

## MULLIGAN v. THIRD AVENUE R. CO.

(Supreme Court, Appellate Division, First Department.   November 6, 1903.)

1. STREET RAILROADS—INJURIES TO PEDESTRIANS—NEGLIGENCE—QUESTION FOR
    JURY.
        In an action for injuries to plaintiff by a street car as she was cross-
    ing the track at a regular street crossing, *held*, that the question of the
    motorman's negligence was for the jury.
        Van Brunt, P. J., and Ingraham, J., dissenting.

Appeal from Trial Term, New York County.

Action by Mary Mulligan against the Third Avenue Railroad Com-
pany. From a judgment in favor of plaintiff, and from an order
denying defendant's motion for a new trial on the minutes, and from
an order granting an additional allowance, defendant appeals.   Af-
firmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON,
INGRAHAM, and LAUGHLIN, JJ.

Arthur Ofner, for appellant.
Franklin Pierce, for respondent.

LAUGHLIN, J.   The action is brought to recover damages for
personal injuries alleged to have been sustained by the plaintiff
through the negligence of the defendant.   The principal contention
on the part of the defendant is that there is no evidence of the de-
fendant's negligence, and that the plaintiff was guilty of contributory
negligence.   This is the third verdict rendered in favor of the plain-
tiff in this action.   The case has been twice before this court.   Mul-
ligan v. Third Ave. R. R. Co., 39 App. Div. 663, 57 N. Y. Supp. 424;
Id., 61 App. Div. 214, 70 N. Y. Supp. 530.   On the first appeal the
judgment in favor of the plaintiff was reversed, this court expressing
the opinion that there was not sufficient evidence of negligence on the
part of the defendant to take the case to the jury, but held that, as-
suming that the plaintiff established a prima facie case, the court
erred in instructing the jury on a proposition of law.   On the sec-
ond appeal the judgment in favor of the plaintiff was reversed, and
a new trial granted, four members of the court concurring in the
proposition that an error was committed in the reception of evidence,
and the majority expressing the opinion that there was no negligence
shown on the part of the defendant, but two dissenting from that
view, and expressing the opinion that the evidence required the sub-
mission of the case to the jury.

It is claimed in the points for appellant that the evidence is the
same as that upon the former appeal, but the reverse of this is claimed
by counsel for respondent.   The learned trial justice states in a mem-
orandum denying the motion for a new trial that "the case presented
by the plaintiff is here appreciably stronger than on the former ap-
peal."   The evidence in favor of the plaintiff, as presented by this

record, appears to be materially stronger than that presented on the former appeals, judging from the statements of facts found in the former opinions of this court. The plaintiff was a teacher in a public school on Eighty-Fourth street between Madison and Park avenues. On the 20th day of April, 1896, a pleasant, but somewhat cloudy, day, she left the school about 12 o'clock to go to her luncheon at the southeasterly corner of Seventy-Eighth street and Second avenue. She passed along the southerly side of Eighty-Fourth street, and was crossing Third avenue on the southerly crosswalk when she was struck and injured by a north-bound car. She testified: That when she arrived at Third avenue she saw some trucks passing downtown on the south-bound track. That a car was following behind them. That, after waiting for them to pass, she attempted to cross right behind the car. That she had crossed the downtown track in safety, and was just about to cross the uptown track—had in fact placed her foot upon the westerly rail of the uptown track— and just then she saw a car approaching from the south very rapidly, and it appeared to be about 24 or 25 feet away. That, deeming herself in danger, she stepped back, and turned one side to see if she could retrace her steps, and just then she saw a large, clumsy, heavy truck coming down the easterly wheels being about 14 inches east of the easterly rail of the downtown track, and when she turned to retrace her steps "the horses seemed to be right at me. The truck reached me—just reached me; and I tried to stand between the up-going car and the downgoing truck, which was a very small space. I do not know how much. I tried my best to stand in the center as well as I could. The next thing I was struck by the car and thrown over—struck on the right side, and thrown over on the left side." That the car did not lessen its speed, but, on the contrary, increased its speed. That it was not after she stepped on the track that she first saw the car. That she saw the car, and stepped on the track, and then saw that it was coming so rapidly that she turned or stepped back, and glanced quickly to see if she could retrace her steps. That she had not seen the north-bound car or the truck which was approaching on the south-bound track before she reached the north-bound track. That she did not see the upcoming car on account of the trucks and car that were going down. That as she was passing in the rear of the south-bound car, and before she stepped on the north-bound track, she did not hear any gong rung; and that after she had passed the south-bound car there were no obstructions between her and the approaching north-bound car. The testimony of the plaintiff was in the main corroborated by the testimony of a disinterested eyewitness, who further testified that he did not hear any gong rung, and that the car that struck the plaintiff did not stop until it passed over Eighty-Fourth street. Evidence was also given in behalf of the plaintiff showing that this was a cable line; that the speed of the cable on the day in question was the usual speed of eight or nine miles an hour; that the track between Eighty-Third and Eighty-Fourth streets was substantially level; and that, under the circumstances existing at the time in question, a car running at the speed of the cable could be stopped at this point within 15 or 20 feet. The

motorman, called in behalf of the plaintiff, testified that at no time was the plaintiff actually upon the track upon which this car was approaching; that the car was going at three-quarters the speed of the cable; that, upon seeing the plaintiff come from behind a truck which was going down the south-bound track, he immediately released the grip and put on the brake; that he rung the bell, and went past her at about half speed; that the speed of the car was not increased within 25 feet of the crossing; that the front of the car did not strike her; that as he passed her she was standing between the tracks; that he saw her between the tracks, and saw the approaching truck, the wheels of which, he says, were in the grooves of the rails of the track; that he saw "the position that she was in," and made no attempt to stop the car until after she was struck; that on the first trial he testified that he approached the crossing at full speed; that after the front of the car passed the plaintiff about 15 feet he received three bells—a signal of danger, and he stopped on a line with the north crossing; that he considered that she had plenty of room to stand between the truck and the car; that his car had been approaching at full speed, but was going at only three-quarters speed when he first saw the plaintiff, which was when he was within 10 or 12 feet of her; that a car going at the full speed of the cable cannot be stopped within 15 feet; that as he passed the plaintiff the horses of the approaching truck were trotting, but they had not "got on a line with her at that time." The conductor, who was a witness for the defendant on the last-preceding trial, was not called this time. A passenger on the car, called by the defendant, testified that it was an open car, and the plaintiff was struck by the second or third stanchion; that the plaintiff was standing between the truck passing south and the car; that the plaintiff passed "within two feet of the truck, and when she came up she wanted to go back, and she could not go on account of the truck was right behind her, and at the same time she was struck on the head." An experienced motorman called testified that the shortest space in which a car running at the speed of the cable could be stopped was about 30 or 35 feet.

This evidence presented a question of fact for the consideration of the jury. It could not be said, as matter of law, either that the plaintiff was guilty of contributory negligence or that the defendant was free from negligence. Plaintiff was crossing the street at a regular crossing, where those driving vehicles and operating street cars were bound to take notice that pedestrians might be passing, and to recognize their equal rights. After plaintiff had crossed the south-bound track, and was about to step on the north-bound track, this car, according to her testimony, was 24 or 25 feet south of the crossing, a sufficient distance, if the car was operated with care and caution and the motorman had had it under control, as he should have had on approaching a crossing, to have enabled her to pass in safety; but upon taking her first step upon the track she discovered that the car was approaching rapidly, and that its speed was accelerated, and, fearing that she could not cross in safety, she attempted to retrace her steps. Upon stepping or turning back and looking around she found that a vehicle was rapidly approaching her from the south on the

southbound track, and so close that she could not pass it. She decided to remain between the car and the vehicle. The motorman, according to his own testimony, saw the situation as it existed, including the position of the approaching vehicle with reference to the plaintiff. According to her testimony, the jury were justified in finding that there was not room for her to stand in safety, in the exercise of reasonable care, between the vehicle and the car, as the left-hand wheels of the vehicle were between the inner rails of the tracks. In these circumstances, the jury were justified in finding that the motorman should either have afforded her an opportunity to pass in front of his car, or have passed her with the speed reduced, so that she would not be terrified, and he would be able to control his car and look out for her safety. This he did not do, but proceeded, as he admitted, at half the speed of the cable, and paid no attention to her after the front of the car passed. Nor can it be said that the evidence preponderates in favor of the defendant. Very little evidence on the main issue was introduced in its behalf, and, in our opinion, this court would not be warranted in setting aside this verdict of the jury as against the weight of the evidence.

The exceptions taken by the defendant and presented upon the appeal have been examined, but we think they present no error.

It follows that the judgment and orders appealed from should be affirmed, with costs.

PATTERSON and HATCH, JJ., concur.

INGRAHAM, J. I dissent from the affirmance of this judgment. On the two former appeals (39 App. Div. 663, 57 N. Y. Supp. 424; 61 App. Div. 214, 70 N. Y. Supp. 530) this court, upon substantially the same testimony, held that there was no evidence to justify the jury in finding that the defendant was negligent, and upon the third appeal it is proposed to reverse these two considered judgments, and sustain a verdict based upon the negligence of the defendant. On the last appeal (61 App. Div. 214, 70 N. Y. Supp. 530) the reasons that sustain that conclusion are stated.

VAN BRUNT, P. J., concurs.